IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JARVIS GILBERT

        Petitioner,

v.

TOM FELKER, Warden,

        Respondent.

NO. C 07-5987 TEH

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND MOTION FOR EVIDENTIARY HEARING**

    Petitioner Jarvis Gilbert, a state prisoner, seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging a conviction from Alameda County Superior Court. For the reasons set forth below, the petition and the motion for an evidentiary hearing will be denied.

## PROCEDURAL BACKGROUND

    Petitioner was charged with, and convicted by a jury of, one count of attempted murder, in violation of California Penal Code sections 187 and 664, eight counts of assault with a firearm, in violation of California Penal Code section 245(a)(2), two counts of shooting at an occupied vehicle, in violation of Penal Code section 246, one count of carrying a loaded weapon, in violation of Penal Code section 12031, and various firearms enhancements. On October 8, 2004, the court sentenced Gilbert to 42 years to life in state prison.

    On September 20, 2006, the California Court of Appeal affirmed the Petitioner's conviction in an unpublished decision and denied his state habeas petition. The California Supreme Court denied his petition for review from the affirmance of his direct appeal. Petitioner filed this federal petition for a writ of habeas corpus under 28 U.S.C. § 2254 on

November 27, 2007. This Court ordered Respondent to show cause why a writ of habeas corpus should not issue on December 13, 2007. Respondent has filed an answer to the order to show cause and Petitioner has filed a traverse. The petition is now before the Court, as is Petitioner's motion for an evidentiary hearing, to which Respondent filed an opposition.

**FACTUAL BACKGROUND**

The California Court of Appeal summarized the facts of the case and the evidence presented as follows:

> To connect defendant to the shootings, the prosecution relied largely on a tape recording of a statement made to police less than a month after the shootings by L.R., who was 13 years old at the time. In the tape, played for the jury, L.R. told the police that she, Fatima Robinson, Manuel Adrow, and James Holloway were riding in a car in Oakland on the night of October 11, 2002. Adrow was driving. According to L.R., the "2-6" gang from Oakland intended to kill Adrow and Holloway, believing that the pair were responsible for another killing. As L.R. and the others were riding, a car pulled up beside them. L.R. saw defendant, known to her as "J-Rock," in the passenger seat of that car. She watched as J-Rock began to shoot at the car in which she was riding, firing "at least . . . ten" shots. Only one shot actually entered the passenger area of Adrow's car, and no one was harmed before Adrow sped away.
>
> Later that night or early the next morning, after the four had picked up a fifth passenger, Lester "Mookie" Williams, Adrow drove to a gas station. As Adrow pulled out of the station, a car pulled up behind Adrow's car and turned off its lights. Several men climbed out of the car behind and started shooting at Adrow's car. L.R. again recognized defendant as one of the shooters. The shooting continued until Williams, described by L.R. as a "friend" of the shooters, jumped out of the car and yelled, "It's Mookie, it's Mookie."
>
> L.R. later identified defendant's picture in a photo lineup. Sergeant David Cronin, an Oakland police officer who had conducted the interview with L.R., confirmed that in the photo lineup she had identified defendant's photo as that of J-Rock.
>
> L.R. was brought to defendant's trial on a warrant, having failed to appear voluntarily. When questioned by the prosecution, L.R. claimed that she did not remember details of the incident and denied ever having identified defendant as the shooter. Rather, she claimed that her account of events, including her identification of J-Rock, was based entirely on what Robinson had told her. It was at this point that her taped statement was introduced and played to the jury as a prior inconsistent statement.
>
> The prosecution sought to explain L.R.'s recantation by suggesting that she feared that testifying against defendant would subject her to retribution. At the beginning of the first tape, when Cronin asked L.R. to give a written statement, she told him, "Look, I don't wanna die, okay? I'm gonna tell . . . I don't wanna . . . they gonna try to kill me . . . talkin' to police . . . tryin' to tell the police

2

what happened, they gonna try to kill me." The prosecution also played a tape recording of a subsequent interview of L.R. by Cronin, made after she failed to appear in court for a prior hearing. During the interview, L.R. acknowledged that she had told the truth in her earlier statement. When Cronin asked her if she understood she was required to appear in court and testify truthfully, she responded, "Yep, I understand I need to tell the truth, but I'm not tellin' nothin'." She pleaded with police not to call her to testify, saying, "I go to court, tell everything, then I'm a get-I'm gonna die. Then what? Y'all might as well just shoot me! Don't send me to court." Cronin testified about the circumstances of the interview and L.R.'s fearful demeanor at the time. In addition, as described in more detail below, Cronin testified on redirect examination that Robinson, as well as L.R., had identified defendant in the photo lineup. Robinson did not testify at trial.

John Paul Williams,[1] an inspector with the district attorney's office, testified that when he served the subpoena on L.R. for her trial testimony, she became so upset that she soiled herself. She told Williams that if she came to court to testify, she would be killed. Williams also described his unsuccessful efforts to locate one of the other occupants of the car, Robinson. Deputy District Attorney Jason Sjoberg, the prosecutor who had conducted the preliminary hearing in this matter, was called to testify about L.R.'s conduct during her preliminary hearing testimony. He stated that she believed she would be killed if she testified. When Sjoberg pressed her during the preliminary hearing, she claimed she was blind, pulled her sweatshirt over her face, and began to shake and cry. Sjoberg also testified about events at the preliminary hearing involving Robinson, who attempted to run from the courthouse and failed to return to testify.

When Holloway was called to testify, he denied knowing L.R. and defendant, and was reluctant to answer questions about the incident. His preliminary hearing testimony, which confirmed the general details of the shootings provided by L.R. in her statement to police, was read to the jury. In that testimony, Holloway acknowledged that he, L.R., Robinson and Adrow initially had been shot at from another car and later had been shot at as they left the gas station. He testified that as the shooting started the second time, Adrow first swerved and wrecked the car, then jumped from the car and began running. After the shooting stopped, the group found Adrow a short distance away with bullet wounds to his shoulder and head.

Defendant's sister testified in his defense that he had been with her at the time of both shootings, staying overnight at her house because she was in an advanced stage of pregnancy. She admitted under cross-examination that, although defendant had been in jail for two years awaiting trial, she had not told anyone that he had stayed with her that night until the day before her testimony, when she was contacted by defense counsel. The defense also presented testimony by a friend of defendant's family, Jason Watts, who testified that both he and defendant are known by the nickname "J-Rock."

*People v. Gilbert*, 2006 WL 2687043, at *1-3 (Cal. App. 2006) (footnote in the original).

//

---

[1] Hereafter "Williams" will refer to John Paul Williams with the district attorney's office, rather than Lester "Mookie" Williams.

3

**DISCUSSION**

**Legal Standard**

A petition for a writ of habeas corpus before this Court is proper "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Court may only grant the writ with respect to any claim that was adjudicated on the merits in state court where the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. The question before the federal court making the "unreasonable application" inquiry is whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409. The holdings, not dicta, of the U.S. Supreme Court as of the time of the state court decision are the only definitive source of clearly established federal law under 28 U.S.C. § 2254(d). *Id.* at 412.

//

//

**Discussion**

Petitioner asks the Court to grant him an evidentiary hearing in order to develop the factual record regarding the eight separate claims of ineffective assistance of counsel that form the basis of his habeas petition. Because the issue of the propriety of an evidentiary hearing and the merits of the habeas claim are interrelated, the Court will first lay out this relationship before turning to the merits of the evidentiary hearing motion and petition for the writ.

The legal standard for granting an evidentiary hearing is established by AEDPA:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> (A) the claim relies on–
>
>     (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
>     (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). The Supreme Court has held that "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams*, 529 U.S. at 432.

Where petitioner has not failed to develop the factual record:

> [i]n deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. *See, e.g.*, *Mayes v. Gibson*, 210 F.3d 1284, 1287 (C.A.10 2000). Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate. *See id.*, at 1287-1288 "Whether [an applicant's] allegations, if proven, would entitle him to habeas relief is a question governed by [AEDPA]"). It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.

5

*Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (internal footnote omitted).

As the parties here dispute whether Petitioner failed to develop the factual record, the Court will assume without deciding that Petitioner did in fact discharge his obligation to develop the record at the state court. The Court will thus apply the more liberal test for an evidentiary hearing used for those petitioners who have sufficiently developed the factual record; if Gilbert's motion for an evidentiary hearing fails on this standard, it certainly would also fail on the more stringent standard applied where petitioner has failed to develop the record. Thus, Petitioner Gilbert is not entitled to an evidentiary hearing if the record refutes his factual claims or otherwise precludes relief; an evidentiary hearing is appropriate only if it could enable Gilbert to prove allegations that would entitle him to relief.

To prevail on an ineffective assistance of counsel claim on a habeas petition, petitioner must demonstrate that the state court's rejection of the claim qualified as an objectively unreasonable application of the two-part standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Weighall v. Middle*, 215 F.3d 1058, 1062 (9th Cir. 2000) ("In accord with *Williams*, we hold that [petitioner's] *Strickland* challenge should be analyzed under the 'unreasonable application' prong of § 2254(d)[.]"). Thus, Petitioner must demonstrate that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) counsel's "deficient performance prejudiced the defense," *Strickland*, 466 U.S. at 688, 687, and that the state court unreasonably applied this test.

In the case of a habeas petitioner bringing claims for ineffective assistance of counsel, to warrant provision of an evidentiary hearing, the petitioner must show that he has presented a colorable claim to habeas relief for ineffective assistance of counsel, which requires petitioner to demonstrate colorable claims of both *Strickland* prongs. Both parties here acknowledge that only if Petitioner has presented a colorable case for the two prongs of the *Strickland* test should an evidentiary hearing be granted . Accordingly, the Court will first determine whether Petitioner has a colorable *Strickland* claim. If Gilbert lacks a colorable claim for ineffective assistance of counsel, it logically follows that he is neither entitled to an evidentiary hearing nor to habeas relief.

6

The two prongs of the *Strickland* standard are well-defined, and both must be proven, as "[u]nless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687. As to the first element, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Hence, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* To fulfill the second element, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "To show prejudice under *Strickland* from failure to file a motion, [petitioner] must show that (1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him." *Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999). Because prejudice must likewise be shown for a failure to object, a similar standard is applicable here.

Gilbert brings eight claims before the Court, each raising a separate issue of ineffective assistance of counsel. These claims are clustered in two groups: evidentiary errors and prosecutorial misconduct. Gilbert asserts that his counsel rendered ineffective assistance by failing to object in each of the following four instances of evidentiary error:

> 1) Calling an Alameda County District Attorney who had actively prosecuted petitioner's criminal case to testify as a prosecution witness.
>
> 2) Calling an investigator who worked for the Alameda County District Attorney's office to testify about a witness' alleged reaction when served with a subpoena.
>
> 3) Eliciting testimony from Sergeant Cronin that a witness never made available for cross-examination, Fatima Robinson, had made an out of court identification of petitioner as one of the gunmen, and arguing this out of court identification during closing.
>
> 4) Eliciting testimony from Inspector Williams that Rodriguez' [sic] mother, also a witness never made available for cross examination, had told him petitioner would have his friends kill Rodriguez [sic] if she testified.

Pet. at 10 (substituting numbering for letters).

7

Likewise, Petitioner asserts that his counsel provided ineffective assistance for failing to object to four instances of prosecutorial misconduct:

> 5) Prosecutorial closing argument that warranted the testimony of at least one witness, an investigator from the district attorney's office.
>
> 6) Prosecutorial closing argument urging the jury to convict petitioner . . . "to protect community values, preserve civil order, or deter future lawbreaking." *United States v. Koon*, 34 F.3d 1416, 1443 (9th Cir. 1994).
>
> 7) Prosecutorial closing argument arguing the existence of "facts" not a part of the record, or asking the jury to draw conclusions from matters that were not a part of the record, such as what a witness allegedly did after he finished testifying.
>
> 8) Prosecutorial closing argument stating that if the jury disbelieved petitioner's alibi witnesses, it would have to convict petitioner.

Pet. at 11 (substituting numbering for letters).

As this petition can be resolved solely on the basis of prejudice, the Court declines to reach the first *Strickland* prong of objectively unreasonable performance by counsel. Assuming, without deciding, that the evidence was admitted in error and that counsel's failure to object was deficient, these errors are not sufficient to undermine confidence in the outcome of Gilbert's trial. Based on this assumption, even if proper objections had been made, the challenged evidence had not been admitted, and the trial judge had made proper limiting instructions during the closing argument, Gilbert's petition must fail as he has not offered sufficient proof of prejudice. *Accord Jackson v. Brown*, 513 F.3d 1057, 1082 (9th Cir. 2008) ("[E]ven if [counsel's] failure to object was deficient, we cannot find that, but for his errors, there is a reasonable probability that the jury would not have still convicted [petitioner].").

In his petition, Gilbert describes how each individual error prejudiced his case, and indicates as well that cumulative error is present in this matter. Yet the possibility of a different outcome requires the Court not only to consider the effect of the errors if corrected, but also to conduct a careful assessment of the admissible evidence presented by the prosecution, and to consider the case as a whole. Here, the state court properly assessed the weight of the evidence against Gilbert. Ex. 8 at 20. The gravamen of this evidence came

8

from L.R, the teenaged girl who identified Petitioner in a photo lineup. Although L.R. disclaimed her identification on the stand, she was impeached with her prior statement. Furthermore, L.R.'s fear of Petitioner and his acquaintances was clearly demonstrated in the tape of her prior statement that was played for the jury, thus offering an imminently logical explanation of her recantation.

Additionally, it is worth noting that Petitioner's defense turned on the testimony of his sister as an alibi witness. During trial, her credibility was seriously undermined by the fact that her alibi testimony did not come to light until the day before it was presented at trial.

Because the asserted errors do not go to the heart of the substantial evidence presented against Gilbert, the Court cannot find that, but for these assumed errors, there is a reasonable probability that the jury would not have convicted Gilbert of his array of offenses. On the contrary, it appears that a jury would very likely reach the same conclusion, even if the assumed errors were to be corrected. The Court finds that Gilbert has not shown prejudice, which is a necessary element of a successful *Strickland* claim. Accordingly, Gilbert cannot prevail on his petition for federal habeas relief on his ineffective assistance of counsel claims. Gilbert thus has not shown that the state court treatment of his claims amounted to an objectively unreasonable application of the *Strickland* standard, as it too concluded that there was no prejudice. Having failed on the merits to show prejudice, Petitioner has also failed to demonstrate the colorable case of ineffective assistance of counsel that is required to grant an evidentiary hearing. The Court must therefore deny the motion for an evidentiary hearing.

Petitioner further asks this Court to recognize his claims on the basis of plain error review. As the Court of Appeal noted, the California Supreme Court has rejected the plain error doctrine. *See People v. Benavides*, 35 Cal. 4th 69, 115 (2005). As a result, this Court shall not employ the plain error doctrine here; Petitioner's claims cannot succeed on this basis either.

//

//

//

9

**CONCLUSION**

Having carefully considered all submitted papers, the Court DENIES Petitioner's motion for an evidentiary hearing, and further DENIES the writ on all grounds.

**IT IS SO ORDERED.**

Dated: May 22, 2009

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT